This case addresses the appeal of (1) the *Order Granting Final Relief in Connection with Motion by Hawaiian Telcom, Inc. Enforcing the Court's Sale Order* (the "Final Enforcement Order"), and (2) the *Order Denying Waimana Enterprises Inc.'s Motion for Reconsideration of Findings of Fact* in the Final Enforcement Order (the "Reconsideration Order").[1]  These orders were entered at ECF 729 and 784, respectively, of the bankruptcy case of Paniolo Cable Company, LLC ("Paniolo"), Bankr. No. 18-01319 (the "Paniolo Bankruptcy").[2]

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to enter the appealed orders under 28 U.S.C. § 1334.  The sale of a debtor's assets is a core proceeding under 28 U.S.C. § 157(b)(2)(a), (n), and (o), and the enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction.  *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153-55 (2009) (holding that the "bankruptcy court plainly had jurisdiction to interpret and enforce its own prior orders . . . .").  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

The Final Enforcement Order was entered on May 17, 2022.  Appellant

---

[1] The orders have been appealed to this Court in three separate actions by related parties: Case Nos. 22-426, 22-427, and 22-428.  These appeals are also linked to three additional appeals by related parties pending in this Court at Case Nos. 22-434, 22-435, and 22-441.  A consolidated summary timeline of the factual and procedural history underlying all six interrelated Paniolo Bankruptcy appeals has been attached hereto as **Exhibit A**.

[2] All citations herein listed as "Bankr. ECF" are citations to the Paniolo Bankruptcy docket.

Waimana Enterprises Inc. ("Waimana") sought reconsideration of the Final Enforcement Order on May 27, 2022, and the resulting Reconsideration Order was entered on August 17, 2022. Waimana proceeded to file this appeal of both orders on August 30, 2022.

## STATEMENT OF THE CASE

**I.     HTI incorporates the Statement of the Case contained in its opposition brief relating to SIC's appeal of the same orders.**

Appellee Hawaiian Telcom, Inc. ("HTI") incorporates herein by reference the statement of the case it provided in its simultaneously filed opposition brief at Case No. 22-426, ECF 35 (an appeal filed by Waimana's wholly-owned subsidiary, Sandwich Isles Communications, Inc.).[3] Given that the two actions are appeals of the same orders, the same factual and procedural history underlies both appeals.

**II.    The Settlement Agreement and Settlement AP**

One difference between Waimana's and SIC's appeals of the same orders is that Waimana relies more heavily on a certain settlement agreement the SIC Parties reached with the Trustee and certain of Paniolo's creditors, in an attempt to use that agreement to modify clear language in the Bankruptcy Court's Sale Orders to the contrary. Accordingly, HTI provides additional background here regarding the

---

[3] All capitalized terms used but not defined herein hold the meanings ascribed to them in this referenced statement.

Settlement Agreement:

Shortly after the Marshal Sale, but prior to the 363 Sale, the Trustee, the SIC Parties, and certain of Paniolo's creditors entered into a Rule 9019 Settlement Agreement (the "Settlement Agreement") in the Paniolo Bankruptcy to "rearrange[] their business affairs among themselves." Bankr. ECF 252-3; Bankr. ECF 366 at ¶ iv.[4] In giving effect to the Settlement Agreement, the Trustee and SIC entered into a temporary Master Relationship Agreement (the "MRA") attached as an exhibit thereto. Bankr. ECF 252-3, Bankr. ECF 253. The Bankruptcy Court approved the Settlement Agreement on June 4, 2020. Bankr. ECF 272. HTI was not a party to the Settlement Agreement, the MRA, or the two schedules to the MRA (titled, the "SIC Lease" and the "Assets IRU").

On October 12, 2021, SIC initiated an adversary proceeding against the Trustee and HTI within the Paniolo Bankruptcy (Case No. 21-90017, the "Settlement AP"), asserting, *inter alia,* that the Trustee had breached the terms of the Settlement Agreement by wrongly terminating the MRA. Settlement AP, ECF 1. SIC claimed that any purchaser of Paniolo's assets was required to be "bound by the terms" of the MRA, and sought declaratory judgment that the Settlement Agreement, the MRA, the SIC Lease, and the Assets IRU (the "9019 Agreements")

---

[4] While the Settlement Agreement is drafted to be "effective as of March 6, 2020," the Trustee did not seek the Bankruptcy Court's approval of the Settlement Agreement until April 24, 2020. Bankr. ECF 252.

remained "enforceable" against HTI as the purchaser of Paniolo's assets.  *Id.* ¶ 46.
*See also* Tr. Hr'g (January 14, 2023) at 18:20-23.

At a hearing on January 14, 2022, the Bankruptcy Court held that HTI was
not a party to any of the 9019 Agreements, and that there was no basis for SIC to
enforce any of the 9019 Agreements against HTI.  *Id.* at 17:5-21.  In particular, the
Bankruptcy Court noted that the 363 Sale Order, "which was not appealed,
specifically provides that the [363] sale will be free and clear of all encumbrances
pre- and post-petition." *Id.* at 19:7-16.  The Bankruptcy Court also held that while
the Trustee's failure to require HTI to assume the MRA under the 363 Sale may have
been in breach of its obligations under the Settlement Agreement, such failure was
excused by earlier, material breaches of the Settlement Agreement by SIC.  *Id.* at
18:24 – 24:16.  The termination of the MRA by the Trustee was similarly excused.
*Id.* at 24:7-14.

The Bankruptcy Court therefore entered judgment against SIC in the
Settlement AP on February 2, 2022.  Settlement AP, ECF 63.  Just as the SIC Parties
chose not to appeal the Marshal Sale Order or the 363 Sale Order, the SIC Parties
also did not appeal this judgment.

## STANDARD OF REVIEW

The Final Enforcement Order is an order addressing the Bankruptcy Court's
interpretation of its own prior orders.  A court's interpretation of its own orders is

accorded "substantial deference" and will not be overturned unless the reviewing court is convinced it amounts to an abuse of discretion. *In re Wallace,* 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013); *In re USA Com. Mortg. Co.,* 452 F. App'x 715, 720 (9th Cir. 2011). Denial of a motion for reconsideration is similarly reviewed for an abuse of discretion. *In re Donovan,* 871 F.2d 807, 808 (9th Cir. 1989); *In re Weiner*, 161 F.3d 1216, 1217 (9th Cir. 1998); *In re Cerchion*e, 414 B.R. 540, 545 (B.A.P. 9th Cir. 2009).

## SUMMARY OF ARGUMENT

Waimana asserts that the Bankruptcy Court's failure to conduct an evidentiary hearing in connection with HTI's Main Motion to Enforce warrants reversal and remand of the Final Enforcement Order, but Waimana never requested an evidentiary hearing before the Bankruptcy Court. This alone warrants dismissal of Waimana's appeal under Ninth Circuit law. Similarly, Waimana asserts that the Bankruptcy Court should not have entered the Final Enforcement Order until discovery occurred, but Waimana never sought discovery, nor was it ever precluded from seeking discovery in the case. Waimana's own idleness cannot reasonably be considered an error by the Bankruptcy Court.

In fact, Waimana fully participated in the litigation that resulted in entry of the Final Enforcement Order – it filed two pleadings and appeared at the hearing on HTI's Main Motion to Enforce. The Bankruptcy Court properly granted HTI's Main

Motion to Enforce based on its interpretation of its own prior orders and on the extensive record in the case. Waimana has not shown, and indeed cannot show, that there exists any evidence in connection with its alleged "disputed questions of fact" that would materially alter the Bankruptcy Court's decision on the Main Motion to Enforce that is contained in the Final Enforcement Order. Waimana hopes to find such evidence through discovery, but fanciful ambitions are not valid grounds warranting reversal and remand.

## ARGUMENT

Waimana asserts that the Bankruptcy Court erred by entering the Final Enforcement Order and the Reconsideration Order without "discovery and an evidentiary hearing" necessary to resolve "disputed questions of fact." Opening Br. at 4. In lieu of elaborating on its legal position, however, Waimana's "Argument" section of its opening brief instead presents a garbled mix of procedural history, misleading facts, excerpts from its own prior pleadings, and incorrect legal assertions. Waimana's efforts to sow confusion do not create a factual dispute that warrants remand. Waimana has not shown that the Bankruptcy Court committed error by failing to hold an evidentiary hearing that Waimana never requested, or by failing to permit discovery that Waimana never sought. Waimana also cannot establish that its illusory, unidentified evidence would have materially altered the Bankruptcy Court's decision.

**A.    Waimana never sought an evidentiary hearing from the Bankruptcy Court, and is thus barred from raising this as an error on appeal.**

Waimana asserts that the Bankruptcy Court erred by not holding an evidentiary hearing in connection with the Main Motion to Enforce, but the record reflects that Waimana never requested an evidentiary hearing.  When a party fails to actually request an evidentiary hearing from the bankruptcy court, it is precluded from later asserting on appeal that the bankruptcy court erred in not conducting an evidentiary hearing.  *In re Audre Inc.*, 59 F. App'x 925, 927 (9th Cir. 2003).

In *In re Audre Inc.,* the Ninth Circuit noted that the appellants had raised "various legal objections" at the bankruptcy court level, but never requested an evidentiary hearing, thus waiving their rights to raise this issue on appeal.  59 F. App'x 925, 927 (9th Cir. 2003). *See also Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir. 1994), *as amended* (Nov. 22, 1994) ("By failing to request an evidentiary hearing in the district court, the defendants waived their right to raise the issue on appeal . . . When the court heard oral argument, the defendants never indicated that they wanted a full evidentiary hearing with an opportunity to cross-examine witnesses.") *Accord In re Livdahl,* Case No. 16-12768, 2019 WL 1615282, at *7 (B.A.P. 9th Cir. Apr. 15, 2019); *In re LLS Am., LLC,* Case No. 11-1524, 2012 WL 2042503, at *9 (B.A.P. 9th Cir. June 5, 2012); *In re Reg'l Care Servs. Corp.,* Case No. 16-1213, 2017 WL 2871751, at *9 (B.A.P. 9th Cir. July 5, 2017); *In re*

*Oasis at Wild Horse Ranch, LLC,* Case No. 11-1142, 2011 WL 4502102, at *7 (B.A.P. 9th Cir. Aug. 26, 2011).

The SIC Parties filed a total of six pleadings in connection with the Main Motion to Enforce, which are listed here below:

- Bankr. ECF 668 (SIC's objection to Main Motion to Enforce);
- Bankr. ECF 698 (Waimana's objection to the Interim Order);
- Bankr. ECF 699 (Clearcom's objection to the Interim Order);
- Bankr. ECF 713 (SIC's objections to final relief under the Main Motion to Enforce);
- Bankr. ECF 715 (Waimana's joinder to SIC's objection); and
- Bankr. ECF 720 (Clearcom's joinder to SIC's objection).

Not a single one of these pleadings made a request for the Bankruptcy Court to hold an evidentiary hearing, or referenced the lack of an evidentiary hearing as an error.[5] The SIC Parties were all present at the final hearing on the Main Motion to Enforce and were given opportunities to be heard before the Final Enforcement Order was granted. *See* Tr. Hr'g (May 16, 2022) at 12:12-15 (when prompted by the Bankruptcy Court for oral argument, Waimana's attorney stated that he had "nothing further to add" to what SIC already argued). Given that the Main Motion to Enforce was a contested matter, Waimana also had every opportunity to seek

---

[5] Waimana also asserts that no evidentiary hearing was held because it was "not allowed to get beyond the motion to dismiss phase . . . in the adversary proceeding." Opening Br. at 8-9. Indeed, Waimana's complaint in its adversary proceeding against HTI (the "Waimana AP") was dismissed, amended, and then dismissed again pursuant to Rule 12(b)(6). The dismissal of Waimana's complaint has been separately appealed to this Court in Case No. 22-435, and will be separately addressed by HTI in its opposition brief thereto.

discovery in connection with the Main Motion to Enforce, but did not do so. *See* Fed. R. Bankr. P. 9014(c). Waimana's assertion now that the Main Motion to Enforce raised questions of fact which warranted discovery and a full evidentiary hearing is thus entirely hollow.

Waimana's motion for reconsideration of the Final Enforcement Order included, for the first time, a thin reference that "a trial is necessary." Bankr. ECF 740 at 5-6. This is too little, too late – the request was plainly deficient, for three reasons. First, a request for an evidentiary hearing must be made prior to a motion for reconsideration. *See In re Reg'l Care Servs. Corp.*, Case No. 16-1213, 2017 WL 2871751, at *9 (B.A.P. 9th Cir. July 5, 2017) (the contention that an evidentiary hearing was necessary on the merits, made for the first time after the bankruptcy court had ruled, was too late; the party had already waived its right to an evidentiary hearing); *In re Cooper*, Case No. 05-1109, 2005 WL 6960193, at *10 (B.A.P. 9th Cir. Oct. 7, 2005) (same). Second, an evidentiary hearing cannot be sought by "generic comments" – it must be formally requested. *See Reg'l Care Servs. Corp.*, 2017 WL 2871751, at *9. *See also In re Oasis at Wild Horse Ranch, LLC,* Case No. 11-1142, 2011 WL 4502102, at *7 (B.A.P. 9th Cir. Aug. 26, 2011). Finally, the reference to a trial being "necessary" in the motion for reconsideration related to an entirely different issue than what Waimana seeks to challenge today. *Compare* Bankr. ECF 740 (Waimana's motion for reconsideration) at 5-6 (asserting that a trial

was "necessary to determine whether SIC Affiliates are bound by commitments made in the settlement agreement")[6] with Opening Br. at 21-22 (asserting that questions of fact exist regarding the "effect of the Rule 9019 Settlement Agreement on whether the Trustee obtained ownership to License 372 in the Marshal Sale . . . and whether [the SIC Parties] waived their right to object . . . by not timely objecting to the [363 Sale Order].")[7]

Accordingly, Waimana's failure to seek discovery or to request an evidentiary hearing in connection with the Main Motion to Enforce now prevents it from asserting that the Bankruptcy Court erred on this front.

**B.  The Bankruptcy Court had ample evidence in the record to issue the Final Enforcement Order without an evidentiary hearing.**

The Bankruptcy Court's decision to enter the Final Enforcement Order based on its interpretation of its prior Sale Orders was amply supported by the voluminous

---

[6] This issue has never actually been in dispute.  HTI, who is not a party to the Settlement Agreement, has never sought to bind the SIC Affiliates to any commitments therein.

[7] In connection with the Initial Motion to Enforce, not the Main Motion to Enforce, an objection filed by SIC made several references to requiring an evidentiary hearing.  Waimana, however, cannot reasonably use SIC's vague request for an evidentiary hearing on a prior motion, to establish that the Bankruptcy Court erred in not conducting an evidentiary hearing on a later, separate motion.  *See, e.g., In re LLS Am., LLC,* Case No. 11-1524, 2012 WL 2042503, at *9 (B.A.P. 9th Cir. June 5, 2012) (appellant "waived its right to complain about the lack of an evidentiary hearing" by not making a request to the bankruptcy court, and could not now "step into the shoes" of the other creditors who had indeed made such requests); *In re Livdahl,* Case No. 16-12768, 2019 WL 1615282, at *7 fn. 4 (B.A.P. 9th Cir. Apr. 15, 2019) (failure to request an evidentiary hearing in an objection to the debtor's second amended plan waived the appellant's rights, notwithstanding that the appellant requested an evidentiary hearing in its objection to the debtor's first amended plan).

evidence contained within the Paniolo Bankruptcy record. Even if Waimana had hypothetically requested an evidentiary hearing, it would have been unnecessary for the Bankruptcy Court to hold one.

On appeal, the review of a bankruptcy court's decision on whether to hold an evidentiary hearing is reviewed for abuse of discretion. *In re Int'l Fibercom, Inc.,* 503 F.3d 933, 940 (9th Cir. 2007); *In re Hollister*, Case No. 21-55380, 2021 WL 6124757, at \*1 (9th Cir. Dec. 28, 2021). If a bankruptcy court has "reasonably determined" that it possessed "sufficient evidence" or an "adequate factual basis" for its ruling without needing to conduct a further evidentiary hearing, it may deny requests for full evidentiary hearings. *Id.* at \*2; *Int'l Fibercom,* 503 F.3d at 946. *See also In re Caviata Attached Homes, LLC,* 481 B.R. 34, 46 (B.A.P. 9th Cir. 2012) (no abuse of discretion as the bankruptcy court had "sufficient undisputed evidence" to issue its ruling).

Evidentiary hearings are not needed to determine questions of law. Further, in cases where the "controlling facts" are undisputed, the bankruptcy court is authorized to determine contested matters on the pleadings and arguments of the parties, "drawing necessary inferences from the record." *Id.*; *In re Brown*, 606 B.R. 40, 51 (B.A.P. 9th Cir. 2019) (cited in Waimana's Opening Br. at 22).

An abuse of discretion will not be found unless the bankruptcy court's conclusion that an evidentiary hearing was unwarranted was "illogical, implausible,

or without support." *In re Johnson*, 755 F. App'x 664, 666 (9th Cir. 2019); *Caviata*, 481 B.R. at 44.  This has been characterized by the Ninth Circuit as a "high burden" to overcome.  *In re Hercules Enterprises, Inc.*, 387 F.3d 1024, 1028 (9th Cir. 2004).

No party sought an evidentiary hearing in connection with the Main Motion to Enforce, and the Bankruptcy Court was not required to hold one.  Bankruptcy courts regularly grant motions based on evidence in the record, and evidence submitted through sworn declarations, without holding an evidentiary hearing to admit additional evidence.  *See, e.g., In re Livdahl,* 2019 WL 1615282, at *7.  In the present case, the record was already undisputedly extensive.  At the time the Main Motion to Enforce was filed, the Bankruptcy Court had already presided over the execution and levy of the Marshal Sale Assets, the Marshal Sale itself, the approval of the Settlement Agreement, and the 363 Sale, and had adjudicated various disputes relating to those items, including the motion to quash the U.S. Marshal's writ of execution, the Initial Motion to Enforce, and the Settlement AP.  Further, the Final Enforcement Order itself was only entered after two rounds of briefing, and two hearings, on the Main Motion to Enforce.[8]

To wit, as described above, six pleadings were filed by the SIC Parties on the Main Motion to Enforce, including two by Waimana.  SIC even filed five supporting

---

[8] The first round of briefing occurred prior to the entry of the Interim Order, and the second had occurred prior to the entry of the Final Enforcement Order.

declarations in connection with its objection, along with a slew of exhibits. Bankr. ECF 668. Each of the SIC Parties were also given opportunities to present oral arguments to the Bankruptcy Court before the Final Enforcement Order was entered. *See generally* Tr. Hr'g (May 16, 2022). The Bankruptcy Court was fully informed in its decision-making and did not need to hold an evidentiary hearing to admit additional evidence. *See In re Oasis at Wild Horse Ranch, LLC,* Case No. 11-1142, 2011 WL 4502102, at *8 (B.A.P. 9th Cir. Aug. 26, 2011) (no abuse of discretion in not holding an evidentiary hearing, because the bankruptcy court read and considered all papers and pleadings, heard and considered the arguments of counsel, and was fully informed with respect to the contested matter). *Accord In re Lowenschuss,* 170 F.3d 923, 929 (9th Cir. 1999) (due process is satisfied where a bankruptcy court reads and considers a motion that initiates a contested matter, the opposition thereto, all supporting papers, and considers the arguments of counsel).

Waimana asserts that certain language in the Assets IRU, an exhibit to the MRA entered into under the Settlement Agreement, purportedly reflects that the Trustee did not obtain SIC's interest in License 372 and is inconsistent with the Bankruptcy Court's findings. Opening Br. at 5-9. Waimana proceeds to point out, however, that the true meaning of this language in the Assets IRU is "not yet known because there was no evidentiary hearing" regarding the Main Motion to Enforce. Opening Br. at 8.

Waimana has not approached this Court with dispositive evidence which it believes the Bankruptcy Court overlooked. It merely points to the potential existence of illusory evidence which it hopes to find, and which it hopes will alter the Bankruptcy Court's findings. *See In re Lee,* Case No. 14-90003, 2015 WL 5598319 (D. Haw. Sept. 21, 2015) (appellant's assertion that an evidentiary hearing could have been held, at which he might have produced unidentified evidence, is unpersuasive). The wishful hope that Waimana might wind up discovering evidence favorable to its position, however, is not valid foundation for an assertion that an evidentiary hearing should have occurred.[9]

## C. An evidentiary hearing would not have materially altered the Bankruptcy Court's determination.

Waimana appears to seek an evidentiary hearing specifically to examine "the effect of the Rule 9019 Settlement Agreement on ownership of License 372." Opening Br. at 4. The Bankruptcy Court's determination in connection with the Final Enforcement Order, however, did not hinge on any interpretation of the Settlement Agreement. The Bankruptcy Court's ruling was based on an interpretation of its own prior-issued Sale Orders. Those orders were final and not

---

[9] Additionally, nothing in the record has indicated to date that the Bankruptcy Court even requires any parol evidence to determine the meaning of the Assets IRU – a contract HTI is not even a party to – or the parties' intentions thereunder. A contract is not "ambiguous," as Waimana suggests (*see* Opening Br. at 22) merely because parties disagree as to its meaning or its terms. *Found. Int'l, Inc. v. E.T. Ige Const., Inc.*, 102 Haw. 487, 497 (2003).

appealed.  Any suggestion that there was an inconsistency between the Sale Orders and the Settlement Agreement should have been raised when those orders were entered, not years later.

The Bankruptcy Court issued the Final Enforcement Order after determining that the arguments raised by the SIC Parties in objection to the Main Motion to Enforce were impermissible collateral attacks on its original orders.  The Bankruptcy Court stated:

> "Much of the arguments made by SIC, Clearcom, and Waimana are really attacks on the prior orders, the sale order in particular. And that order is final. It was not appealed. It is no longer appealable and there's no basis on which to change or modify it. So I'm not going to consider any arguments that would say that the Court essentially shouldn't have approved the sale or didn't have the power to approve the sale in the first place, because that is a done deal…"

Tr. Hr'g (May 16, 2022) at 15:15-22.

The Bankruptcy Court echoed its reasoning in connection with the issuance of the Reconsideration Order.  It first noted that those arguments "were made or could have been made, **and I did consider them all**" in connection with its decision on the Final Enforcement Order.  Tr. Hr'g (August 1, 2022) at 13:18-22 (quoted in Opening Br. at 20) (emphasis added).  It then acknowledged the SIC Parties' argument that there existed a potential inconsistency between the Marshal Sale Order, the order approving the Settlement Agreement, and the 363 Sale Order, but held that "those arguments should have been made when the 363 sale was approved

and before that order was entered," or on an appeal thereof.  *Id.* at 13:23 – 14:11.

In other words, the Bankruptcy Court rejected the arguments raised by the SIC Parties on the grounds that they were untimely, and granted the Main Motion to Enforce based on its interpretation of its prior Sale Orders.  Waimana's plan to find and provide additional evidence that supports its interpretation of the Settlement Agreement would not have affected the timeliness of its presented argument, and thus is not a basis to appeal the Bankruptcy Court's ruling.  *See In re Livdahl,* 2019 WL 1615282, at *7 (appellant did not show on appeal how a possible isolated factual issue compelled reversal).

**D.     The mixture of arguments Waimana alludes to in its brief all hold no merit.**

The only "error" alleged by Waimana in its Opening Brief of this appeal appears to be the fact that an evidentiary hearing was not held regarding the "effect of the Rule 9019 Settlement Agreement on ownership of License 372."  *See* Opening Br. at 4 (summary of argument).  HTI has addressed this alleged "error" above.  The "Argument" section of Waimana's brief, however, is peppered with muddy factual allegations and other implied arguments which it seems to present for this Court to address, apart from the Court's adjudication of its request for remand to hold an evidentiary hearing.  HTI does not believe that these arguments should be considered in connection with the present relief sought by Waimana, but in the event that the

Court finds it necessary to determine these issues, HTI has used the remainder of this filing to clarify the factual record, and to address the incorrect and improper arguments Waimana has alluded to in its brief.

      *i.     The SIC Parties were not precluded from appealing the 363 Sale Order at any time.*

On page 21-22 of its brief, Waimana makes a passing reference to a potential second disputed "question of fact": whether the SIC Parties "waived their right to object . . . by not timely objecting to the [363] Sale Order when they agreed in the Rule 9019 Settlement Agreement not to object to any 363 Sale." Waimana appears to be taking the legal position that its failure to appeal the 363 Sale Order in a timely fashion was excused due to its voluntary agreement, in the Settlement Agreement, not to object to the 363 Sale. Even if it was bound by such an agreement, however, it is unclear why that should excuse Waimana from having to file a timely appeal. It was their own choice to waive any appellate rights, and its decision to do so does not allow it to collaterally attack the Bankruptcy Court's prior orders through subsequent litigation.

There is also nothing which suggests that Waimana ever actually felt any real compulsion to comply with the terms of the Settlement Agreement at any time. To the contrary, the record reflects the opposite: the SIC Parties had already knowingly breached material terms of the Settlement Agreement long before the 363 Sale

occurred. The SIC Parties had failed to pay rent, and had been in breach of an explicit warranty clause in the agreement. *See* Tr. Hr'g (January 14, 2022) at 18:24 - 24:16. Accordingly, Waimana and the other SIC Parties' claim that they felt constrained from appealing the 363 Sale by contractual obligation is particularly hollow and disingenuous.[10]

          *ii.*     *Waimana's failure to timely appeal is not excusable.*

Waimana separately attempts to argue, for the first time, something akin to excusable neglect in its failing to appeal the 363 Sale Order. *See* Opening Br. at 21 ("[T]here was no reason for the SIC Parties to appeal the 363 Sale Order because it incorporated and preserved SIC Parties' rights set forth in the Rule 9019 Settlement Agreement and the MRA. It is only later when HTI did not assume the Rule 9019 Settlement Agreement and MRA and used SIC Parties' License 372 premises without any agreement with SIC Parties that this became an issue.").

This argument fails because there is no provision of the 363 Sale Order that requires HTI to assume any contracts associated with the Settlement Agreement. To the contrary, the Sale Order expressly gives HTI the right to determine what contracts it would assume. It is exceedingly common in bankruptcy sales to allow

---

[10] In the same provision in which the SIC Parties agreed not to appeal any entered 363 Sale Order, the SIC Parties also agreed not to object to the 363 Sale. *See* Bankr. ECF 252-3 (Settlement Agreement) § 3(h). SIC still filed an objection to the 363 Sale, however, but merely styled its pleading as a "Statement of Concerns" instead of an outright "objection." *See* Bankr. ECF 348.

purchasers to designate contracts for assumption at their discretion post-closing,[11] and this designation process was built into the 363 Sale Order and the APA approved by the Bankruptcy Court. *See* Bankr. ECF 366 (363 Sale Order) at 9-10 (certain contracts were "assumable," and select contracts would be later "designated" by HTI as the buyer if it wished to assume those contracts). If the SIC Parties believed that HTI had to assume any contracts associated with the Settlement Agreement as part of the 363 Sale, then they should have objected to the 363 Sale Order to the extent that it did not require such assumption. Instead, they did not object and sat silently on this point while the Bankruptcy Court approved an order that provided HTI with the discretion to designate selected contracts for assumption.[12]

In connection with the Settlement AP, the SIC Parties had another full and fair opportunity to litigate whether HTI was required to assume the Settlement Agreement and its related agreements through the 363 Sale. The Bankruptcy Court dismissed those claims after full briefing and a hearing, and that decision was not appealed. There is no basis to give the SIC Parties yet another bite at the apple in connection with their improper attempts to collaterally attack the Sale Orders, or to enforce the Settlement Agreement, upon HTI.

---

[11] *See, e.g., In re ASPC Corp.,* 601 B.R. 766, 799 (Bankr. S.D. Ohio 2019) (citing cases) (finding that provisions granting buyers the discretion to designate executory contracts for assumption are regularly approved in bankruptcy).

[12] This was not one of the issues raised by SIC in connection with their "Statement of Concerns" filed in response to the motion seeking approval of the 363 Sale. *See generally* Bankr. ECF 348.

   iii. *The inclusion of SIC's interest in License 372 in the Marshal Sale Assets does not conflict with the terms of the Settlement Agreement.*

  Waimana takes the position that the Bankruptcy Court's Marshal Sale Order is "inconsistent with the Rule 9019 Settlement Agreement" approved by the Bankruptcy Court on June 4, 2020. Opening Br. at 5. Waimana's underlying premise appears to be that "[i]n the MRA, the Trustee acknowledged and agreed that the Marshal Sale Assets do not include title to License 372," and thus the Marshal Sale Order could not possibly have transferred SIC's interest in License 372 to the Trustee. *Id.* at 6.

  The Bankruptcy Court, however, correctly noted that any inconsistency between the terms of the Sale Orders and the terms of the Settlement Agreement should have been raised "when the 363 Sale Order was approved, and before that order was entered," or on a timely appeal thereof. *See* Tr. Hr'g (August 1, 2022) at 13:23 – 14:6. Waimana's arguments thus amount to an impermissible, belated collateral attack to the terms of the Bankruptcy Court's prior Sale Orders. HTI has briefed this issue in connection with SIC's parallel appeal of the Final Enforcement Order and Reconsideration Order: HTI refers the Court to its brief filed at Case No. 22-426, ECF 35 at 13-15, and incorporates those arguments herein by reference.

  In any event, Waimana's interpretation of the Settlement Agreement is implausible and commercially unreasonable. This argument has also been briefed

by HTI in SIC's parallel appeal: HTI refers the Court to its opposition brief (*id.*) at 18-19, and incorporates those arguments herein by reference.[13]

Finally, Waimana looks to Section 13 of License 372 as supposed proof that SIC's interest in License 372 could not have been transferred to HTI. Opening Br. at 7. Section 13 provides that no assignment of License 372 can be effected without the prior consent of the licensor – namely, the DHHL. There is no evidence in the record at all, however, that the DHHL did not consent to the transfer of SIC's interest in License 372 to the Trustee through the Marshal Sale, or to the subsequent transfer of that interest to HTI. *See* Bankr. ECF 669 (pleading filed by the DHHL) at 9-10 (noting that the Marshal Sale expressly divested SIC of its interest in License 372, and discussing the subsequent 363 Sale to HTI). In any event, to the extent the DHHL believes that the terms of its own license have been breached, it possesses its own enforcement power to restrict, regulate, or revoke the license as needed.

---

[13] Apart from being unsupported by the language of the Settlement Agreement, the sequence of events also contradicts Waimana's interpretation. The U.S. Marshal filed its *Certificate of Execution* on February 4, 2020, stating that it had already executed upon the listed assets at that time. Trustee's AP, ECF 37. The public auction occurred a month later, on March 6, 2020. *See* Trustee's AP, ECF 57-1 at 4-5. The Marshal Sale Order was entered by the Bankruptcy Court on March 16, 2020. Trustee's AP, ECF 65. Though the Settlement Agreement is dated "as of March 6, 2020," it was not presented to the Bankruptcy Court for review and approval until April 24, 2020. Bankr. ECF 252. Waimana's theory appears to be that the U.S. Marshal executed upon the listed assets, the Trustee purchased those assets, and then agreed to *return* SIC's interest in License 372 through the Settlement Agreement. The language of the MRA and the Assets IRU, which make no reference to SIC's interest in License 372 and which barely even reference the Marshal Sale, simply does not support this far-fetched notion.

iv.    *Waimana's discussion of the Initial Enforcement Order is plainly*

*misleading.*[14]

Waimana's brief points to certain language from the Bankruptcy Court's

Initial Enforcement Order, seemingly as a support for its position that there exists a

question of fact in dispute.  *See* Opening Br. at 11 (underlining the Bankruptcy

Court's statements that the relationship between HTI and SIC was unclear at the time

and that portions of HTI's requested relief could not be granted based on the existing

record).  The Initial Enforcement Order, however, was entered on November 19,

2021.  Bankr. ECF 537.  At that time, the Settlement AP was still being litigated,

and the Bankruptcy Court had not yet adjudicated the issues of whether the MRA

could be enforced against HTI, and whether the MRA had been breached.  The final

judgment in the Settlement AP, however, was issued on February 21, 2022.  The

---

[14] Separately, on page 13-14 of Waimana's opening brief, Waimana discusses a pleading filed by the United States on behalf of the Rural Utilities Service.  This pleading was not designated by either party as part of the appellate record, and should not be considered.  *See, e.g.*, *In re Oakmore Ranch Mgmt.,* 337 B.R. 222, 225-226 (B.A.P. 9th Cir. 2006).  *See* Bankr. ECF 818 and 829 (Waimana and HTI's designations of appellate record).

Waimana also spends a portion of its brief, at pages 14-16, discussing why it disagrees with the DHHL's interpretation of an FCC order that eliminated the exclusive nature of License 372 through preemption.  It is unclear why Waimana believes that this appeal is the right forum to challenge the DHHL's interpretation of an FCC order, but beyond that, the Bankruptcy Court's decision to issue the Final Enforcement Order was not tied to its interpretation – or the DHHL's interpretation – of any FCC Order; it was tied to the interpretation of its own prior Sale Orders. *See* Tr. Hr'g (April 18, 2022) at 8:6-17 ("The only jurisdictional basis I see is my power to enforce and interpret my own orders . . . I don't think I have the power to interpret FCC regulations, or the DHHL license, or anything like that just given where we are in this bankruptcy case."); *see* Tr. Hr'g (May 16, 2022) at 16:16-18 ("…I'm not prepared to go any further than simply interpreting and applying my order based on what it says.")  The "exclusive possessory rights" which Waimana believes the SIC Parties possess cannot reasonably be used to exclude HTI from accessing the HHL when the Trustee purchased, and sold to HTI, SIC's interest in License 372.

Main Motion to Enforce was filed over a month later, on March 29, 2022.

While the Bankruptcy Court did not grant HTI the entirety of the relief it sought in its Initial Motion to Enforce, the record had been considerably substantiated by the time the Main Motion to Enforce was filed, and as discussed, the Main Motion to Enforce went through two rounds of briefing and two hearings before the Final Enforcement Order was entered. Waimana was a party to all of those proceedings and cannot reasonably pretend that the "later filings did not answer these questions" (*see* Opening Br. at 11 fn. 8) simply because it disagreed with those later filings and rulings from the Bankruptcy Court. The Bankruptcy Court was fully aware of its ruling on the Initial Motion to Enforce, and believed that the record in connection with the Main Motion to Enforce was sufficient to grant the relief requested. Waimana's reference to the Bankruptcy Court's Initial Enforcement Order does not show that the Bankruptcy Court abused its discretion in issuing the Final Enforcement Order.

## CONCLUSION

For the foregoing reasons, HTI respectfully requests that the Court affirm the Final Enforcement Order and the Reconsideration Order.

DATED: Honolulu, Hawaii, April 24, 2023.

PETTIT LAW HAWAI'I LLLC

_____/s/ Ted N. Pettit_____
TED N. PETTIT
and
MORGAN, LEWIS & BOCKIUS LLP
ANDREW J. GALLO
MELISSA Y. BOEY

Attorneys for HAWAIIAN TELCOM, INC.